UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAS TRANSMISSION NORTHWEST LLC AND TUSCARORA GAS TRANSMISSION COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>COCHRANE EXTRACTION PARTNERSHIP, COCHRANE EXTRACTION PLANT LTD., INTER PIPELINE EXTRACTION LTD., AND INTER PIPELINE LTD.,<br><br>Defendants. | No. 2:21-cv-01513-JAM-AC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Gas Transmission Northwest LLC ("GTN") and Tuscarora Gas Transmission Company ("Tuscarora"), collectively ("Plaintiffs"), sued Cochrane Extraction Partnership, Cochrane Extraction Plant LTD., Inter Pipeline Extraction LTD., and Inter Pipeline LTD, collectively ("Defendants"), alleging nuisance, negligence, negligent misrepresentation, and trespass. See Complaint ("Compl."), ECF No. 14.

Defendants move to dismiss Plaintiffs' complaint for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim for which relief may be granted. See Mot. to Dismiss ("Mot."), ECF No. 27. Plaintiffs oppose the

motion. See Opp'n, ECF No. 33. Defendants replied. See Reply, ECF No. 35. For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss.[1]

## I. BACKGROUND

Plaintiffs allege that Defendants operate a gas processing facility known as the Cochrane Extraction Plant ("CEP") in Alberta, Canada. Compl. ¶ 2. Plaintiffs allege that Defendants' gas processing operations produce a harmful chemical byproduct, Dithiazine ("DTZ"), which Defendants negligently failed to recover from its gas products before releasing them into Canadian pipe systems that connect to pipelines owned by Plaintiffs in the United States. Id. ¶¶ 2-4. Plaintiffs allege that their pipeline systems have suffered loss and damage as a result of Defendants' negligence. Id. ¶ 5. Plaintiffs further allege that Defendants knew that they were releasing DTZ but failed to disclose this information to Plaintiffs, causing Plaintiffs to undertake costly testing to ascertain the source of the chemical. Id. ¶¶ 6-7. Plaintiffs brought suit on August 23, 2021. See Compl.

## II. OPINION

A. Judicial Notice

Federal Rule of Evidence 201 allows the Court to notice a fact if it is "not subject to reasonable dispute," such that it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for May 3, 2022.

2

1  questioned." Fed. R. Evid. 201(b).  The Court may take judicial
2  notice of court records, including "opinions, complaints,
3  briefs, and evidence filed in other actions." BP W. Coast Prod.
4  LLC v. Greene, 318 F.Supp.2d 987, 994 (E.D. Cal. 2004).
5  However, a court "may not take judicial notice of proceedings or
6  records in another case so as to supply, without formal
7  introduction of evidence, facts essential to support a
8  contention in the cause then before it." See M/V Am. Queen v.
9  San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir.
10 1983).
11     Defendants ask the Court to take judicial notice of a
12 certificate of conversion filed with the Secretary of State for
13 the State of California (Exh. 1 at ECF No. 27-5), search results
14 from the website "California Business Search" run by the
15 California Secretary of State (Exhs. 2-5 at ECF Nos. 27-6 to 27-
16 9), and a complaint filed with the Court of Queen's Bench of
17 Alberta, Canada (Exh. 6 at ECF No. 27-10). See Def.'s Request
18 for Judicial Notice ("DRJN"), ECF No. 27-4).  The Court takes
19 judicial notice of Exhibits 1-6 as public records.  However, as
20 to Exhibit 6, "it is well settled that allegations in pleadings
21 are not evidence." Juniper Networks Inc., v. SSL Services, LLC,
22 No. C08-5758 SBA, 2009 WL 3837266, at *3 (N.D. Cal. Nov 16,
23 2009).  For this reason, the Court takes notice of the fact that
24 a certain complaint was filed in Albert, Canada, but the Court
25 declines to take notice of any allegations contained within the
26 complaint for the truth of the facts asserted.
27     Plaintiffs ask the Court to take judicial notice of Inter
28 Pipeline LTD.'s 2019 "Annual Information Form" (Exh. A at ECF

1  No. 34-1) and filings with the Secretary of State for the State
2  of California (Exhs. B-C at ECF Nos. 34-2 to 34-3).  See Pl.'s
3  Req. for Judicial Notice, ECF No. 34.  Exhibit A is a document
4  referenced in the complaint.  See Compl. ¶ 56; United States v.
5  Corinthian Colleges, 655 F.3d 984, 998-99 (9th Cir. 2011)
6  (taking judicial notice of a document referenced in the
7  complaint).  Exhibits B and C are matters of public record.
8  Accordingly, the Court takes judicial notice of Exhibits A-C to
9  the extent that the contents of the documents are not factually
10 disputed.
11       B.   Personal Jurisdiction
12       Defendants move to dismiss Plaintiffs' complaint for lack
13 of personal jurisdiction under Federal Rule of Civil
14 Procedure 12(b)(2).  Mot. at 4.
15            1.   Legal Standard
16       A party may move to dismiss a suit for lack of personal
17 jurisdiction under Rule 12(b)(2).  To defeat a Rule 12(b)(2)
18 motion, the plaintiff must make a prima facie showing of
19 jurisdictional facts sufficient to establish that jurisdiction
20 is proper.  Mavrix Photo, Inc. v. Brand Tech., Inc. 647 F.3d
21 1218, 1223 (9th Cir. 2011).  Here, where there is no applicable
22 federal statute governing personal jurisdiction, the Court
23 applies the law of California.  Id.  Because California's long-
24 arm statute is coextensive with federal due process
25 requirements, the jurisdictional analysis under state law and
26 federal due process are the same.  Id. (citing Cal. Civ. Proc.
27 Code § 410.10).  For this Court to exercise personal
28 jurisdiction consistent with due process, the defendant must

have "minimum contacts" with this forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal citations omitted).  A court may exercise either general or specific jurisdiction over a defendant. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919-20 (2011).

When parties offer conflicting factual allegations, the matter may be determined by reference to the burden of proof on each party. Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  The party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists. KVOS, Inc. v. Associated Press, 299 U.S. 269, 278 (1936).  The quantum of proof required to meet that burden varies depending on how the trial court decides to resolve a motion for dismissal. Data Disc, Inc., 557 F.2d at 1285.  If, as here, the court decides to resolve the matter based on written materials and affidavits rather than an evidentiary hearing, "a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014).  In determining whether a plaintiff has met its burden, the Court must take uncontroverted allegations in the complaint as true and "[c]onflicts between parties over statements contained in the affidavits must be resolved in the plaintiff's favor." Dole Food Co. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002). Plaintiff's argument must rest on more than "bare bones'

assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations." Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007).

### 2. General Jurisdiction Analysis

A court has general jurisdiction over a party whose "continuous operations within a state [are] so substantial and of such a nature as to justify a suit against it on causes of action arising from dealings entirely distinct from those activities." Int'l Shoe Co., 326 U.S. at 318. This is an exacting standard that requires Defendants' activities in California be "so continuous and systematic as to render [it] essentially at home" in the state. Goodyear Dunlop Tires, 564 U.S. at 919. Generally, a corporate defendant is "at home" in California in three situations: (1) It is incorporated in the state; (2) it has its principal place of business in the state; or (3) it has "continuous and systematic contacts" with the state. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014).

Defendants argue that they are not subject to general jurisdiction in California. Mot. at 4-5. It is undisputed that Defendants are "foreign, alien citizens of Alberta, Canada." Id. at 5; Compl. ¶ 13. Defendants are entities (one partnership and two corporations) organized under the laws of Alberta, Canada. Mot at 4-5; Compl. ¶¶ 10-12. Plaintiffs do not respond to Defendants' general jurisdiction argument in their opposition, choosing instead to cabin their response to specific jurisdiction arguments. Opp'n at 3. Because Plaintiffs do not oppose Defendants' argument that the Court lacks general jurisdiction, Plaintiffs waive this argument. See Resnick v.

6

Hyundai Motor America, Inc., No. CV 16-00593-BRO (PJWx), 2017 WL 1531192 at *22, (C.D. Cal. Apr. 13, 2017) ("Failure to oppose an argument raised in a motion to dismiss constitutes waiver of that argument"). Accordingly, the Court does not find general jurisdiction exists over Defendants.

### 3. Specific Jurisdiction Analysis

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear Dunlop Tires, 564 U.S. at 919. For specific jurisdiction to attach, the relationship between the defendant and the forum "must arise out of contacts that the 'defendant himself' creates with the forum State." Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). The Court's analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden, 134 S. Ct. at 1122.

The Ninth Circuit prescribes a three-prong test for analyzing claims of specific jurisdiction: (1) The nonresident defendant must purposefully direct its activities or consummate some transaction with the forum or resident thereof; or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport

with fair play and substantial justice such that it is reasonable. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs of the test. Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990). If the plaintiff makes a sufficient showing on the first two prongs, the burden shifts to the defendant to prove that jurisdiction would be unreasonable in light of traditional consideration of fair play and substantial justice. Dole Food Co., 303 F.3d at 1114.

Under the first prong of the specific-jurisdiction inquiry, Plaintiffs must make a prima facie showing that Defendants purposely availed or directed their activities at the forum. Schwarzenegger, 374 F.3d at 802. Purposeful availment and direction represent "two distinct concepts," with availment analysis used for suits sounding in contract and direction analysis for suits sounding in tort. Id. Here, where Plaintiffs' claims are for negligence and trespass, purposeful direction analysis is appropriate.

Under purposeful direction analysis, the Ninth Circuit deploys the three-part test from Calder. Schwarzenegger, 374 F.3d at 803, (citing Calder v. Jones, 465 U.S. 783 (1984)). This test requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Dole Food, 303 F.3d at 1111 (internal citations omitted). As noted, Plaintiffs have the burden to prove purposeful direction. Sher, 911 F.2d at 1361.

Plaintiffs argue that specific jurisdiction should be found

1  under the Calder test because "Defendants intentionally market
2  and process natural gas exported to the U.S. and California."
3  Opp'n at 4.  Further, Plaintiffs contend that Defendants have
4  placed their gas product into the stream of commerce in such a
5  way that they should be subject to jurisdiction for injuries
6  caused by their product under the standard set by World-Wide
7  Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980) (finding
8  specific jurisdiction may attach by placing goods into the
9  stream of commerce "with the expectation that they will be
10 purchased by consumers in the forum State").

11     Defendants counter that the only statement supporting
12 Plaintiffs' allegation that Defendants market and process gas
13 for export to the U.S. and California is a single citation to
14 Defendant Inter Pipeline LTD.'s public disclosure from 2019.
15 See Ex. A.  Defendants, however, do not disavow the public
16 disclosure or its contents.  See Opp'n; see Reply.  Since
17 uncontroverted allegations in the Plaintiffs' complaint must be
18 taken as true, the Court finds that Defendants intentionally
19 market and process gas for export to the U.S. and California for
20 the purpose of the present jurisdictional analysis.  Dole, 303
21 F.3d at 1108.  However, the Court notes that Plaintiffs did not
22 specify the target or recipient of Defendants' marketing or gas
23 processing.  It is therefore ambiguous whether Defendants sell
24 gas in California or market their goods to California consumers.

25     This ambiguity undermines Plaintiffs' stream of commerce
26 argument.  As Defendants rebut, "[m]ere placement into the
27 stream of commerce, even with the awareness that the product may
28 or will enter the forum state, 'does not convert the mere act of

placing the product into the stream of commerce into an act purposefully directed toward the forum state.'" Reply at 2, citing Holland Am. Line, Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 459 (9th Cir. 2007).  There must be something more than merely placing a commodity into the stream of commerce, especially here, where it is unclear exactly how or when Defendants' gas product enters the market and the extent to which that market is present in the forum state.

In order to determine whether personal jurisdiction attaches here, the Court centers its analysis on the one allegation that both parties concede is within the scope of the complaint, namely, that Defendants negligently allowed DTZ to enter Plaintiffs' pipeline through their actions in Canada. Compl. ¶ 55; Reply at 1.  This allegation bears great resemblance to an analogous Ninth Circuit case.

In Pakootas v. Teck Cominco Metals, Ltd., the Ninth Circuit held that Teck's intentional dumping of toxic waste into the Columbia River upstream of the U.S.-Canadian border was sufficient under Calder for personal jurisdiction to attach to Teck in the State of Washington, despite Teck being a Canadian defendant.  905 F.3d 565, 577-8 (9th Cir. 2018).  "It is no defense," the Circuit Court wrote, "that Teck's wastewater outfalls were aimed only at the Columbia River, which in turn was aimed at Washington.  Rivers are nature's conveyor belts." Pakootas, 905 F.3d at 578.  The pipelines connecting the Defendants' gas processing facility in Alberta, Canada, to Plaintiffs' pipeline systems in the U.S. and California work the same way.  Defendants' gas processing facility takes, processes,

1   and returns gas to two Canadian pipeline systems, the NGTL
2   System and the Foothills BC System, which flow into Plaintiff
3   GTN's GTN System at the U.S.-Canadian border before feeding into
4   Plaintiff Tuscarora's Tuscarora System in California.  Compl.
5   ¶¶ 22-27.  As discussed above, it is uncontroverted that
6   Defendants knew their gas product would reach the U.S. and
7   California.  Therefore, just as Teck's intentional release of
8   toxic waste into the Columbia River in Canada was sufficient for
9   personal jurisdiction to attach in Washington, Defendants'
10  intentional act of releasing gas products, which negligently
11  contain DTZ, is sufficient under Calder for personal
12  jurisdiction to attach downstream in California, where DTZ's
13  tortious effects are felt.  Pakootas, 905 F.3d at 578.
14       As to the second prong of the specific-jurisdiction
15  inquiry, the Court finds that Plaintiffs' claims arise out of
16  Defendants' actions in Canada, which, under the above analysis,
17  are directed at the forum state.  The second prong is satisfied.
18  Dole Food, 303 F.3d at 1111.  Thus, Court finds that Plaintiffs
19  have made a prima facie showing that Defendants purposefully
20  directed their activities to the forum state.
21       Because Plaintiffs have made this prima facie showing, the
22  burden shifts to Defendants to present "a compelling case that
23  the exercise of jurisdiction would not be reasonable."  Burger
24  King, 471 U.S. at 478.  The Court considers the following seven
25  factors: "(1) the extent of purposeful interjection; (2) the
26  burden on the defendant to defend the suit in the chosen forum;
27  (3) the extent of conflict with the sovereignty of the
28  defendant's state; (4) the forum state's interest in the

dispute; (5) the most efficient forum for judicial resolution of the dispute; (6) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 761 (9th Cir. 1990).

Defendants suggest that traveling to California and securing witnesses from out-of-state would be a burden, but "[m]odern advances in communications and transportation have significantly reduced the burden of litigating in another country." Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988). This factor weighs in Defendants' favor but does not carry the day, especially when Defendants have not meaningfully addressed any of the other factors. Mot. at 8-9; Reply at 3-4. Accordingly, the Court finds that Defendants have failed to present a compelling argument that personal jurisdiction would be unreasonable based on the above factors.

The Court concludes it may exercise personal jurisdiction over Defendants.

C. Standing

Defendants move to dismiss Plaintiffs' claims for failure to state a claim for which relief may be granted on the ground that Plaintiffs failed to establish standing. Defendants rely on California Corporations Code § 2105(a), which provides that "[a] foreign corporation shall not transact intrastate business without having first obtained from the Secretary of State a certificate of qualification." Cal. Corp. Code § 2105. Transacting intrastate business means entering into repeated and successive transactions of its business in California, other

1  than interstate or foreign commerce.  Mot. at 10.  Defendants
2  argue that "[b]ecause this action arises out of Plaintiffs'
3  pipeline businesses within the State of California, Defendants
4  have established that this action arose out of Plaintiffs'
5  transaction of intrastate business."  Mot. 11.
6     Plaintiffs respond that California Corporations Code § 2105
7  is irrelevant because Plaintiffs' business activities related to
8  this suit arise from interstate business and not intrastate
9  business.  Opp'n at 11.  Plaintiffs' complaint establishes the
10 interstate nature of this lawsuit and includes Plaintiffs'
11 international pipeline system.
12    Defendants do not respond to Plaintiffs' arguments in their
13 reply. The Court treats this omission as a concession. See
14 Resnick, No. CV 16-00593-BRO (PJWx), 2017 WL 1531192 at *22,
15 (C.D. Cal. Apr. 13, 2017).  Accordingly, the Court finds
16 California Corporations Code § 2105 does not apply and that
17 Plaintiffs have standing to pursue their suit.
18    D.   Subject Matter Jurisdiction
19    Federal district courts have subject matter jurisdiction
20 over civil actions between parties with diverse citizenship
21 where "the amount in controversy exceeds the sum of or value of
22 $75,000, exclusive of interests and costs."  28 U.S.C.
23 § 1332(a).  When the jurisdiction of the Court is challenged, as
24 it is here, the party invoking federal jurisdiction has the
25 burden of proving by a preponderance of the evidence that
26 removal is proper.  Geographic Expeditions, Inc. v. Estate of
27 Lhotka, 599 F.3d 1102, 1106-07 (9th Cir. 2010).  The parties may
28 submit evidence outside the complaint including affidavits,

declarations, or "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Singer v. State Farm Mut. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997) (internal citation omitted). The district court "must [then] make findings of jurisdictional fact to which the preponderance standard applies." Dart Cherokee, 574 U.S. at 89 (internal citation omitted).

Defendants move to dismiss all claims by Plaintiff Tuscarora for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Defendants argue that Plaintiff Tuscarora has failed to allege the jurisdictional amount because it may not aggregate its claims with Plaintiff GNT. Defendants contend that "[s]ince each Plaintiff owns a distinct pipeline and has its own separate and distinct claims against Defendants, Tuscarora cannot aggregate its claimed damages with those of [GNT] in an attempt to create subject matter jurisdiction." Mot. at 13.

Plaintiff Tuscarora rebuts that it has individually pled damages in excess of $75,000. Opp'n at 12. Plaintiff Tuscarora alleged damages of at least $48,516 for its nuisance claim. Compl. ¶ 69. Plaintiff Tuscarora further alleges that it incurred costs associated with testing for DTZ. Opp'n at 12. Although the complaint does not specify the costs incurred by each Plaintiff separately, Plaintiffs collectively alleged that they installed multiple sample panels in their pipeline systems to ascertain the source of DTZ in their pipes and that each panel costs "between $10,000 to $20,000" to test in a lab. Compl. ¶¶ 42-44. Based on these allegations, the Court surmises

that Plaintiff Tuscarora has incurred the cost of at least one sample panel, bringing the amount in controversy to a range of $58,516 to $68,516, still below the jurisdictional amount.

Although Plaintiff Tuscarora urges the Court to consider other possible damages, such as lost profits and damages, punitive damages, or attorney's fees, Plaintiff has neither specified any such amounts in its complaint nor submitted any supporting documents for the Court's consideration. Plaintiff Tuscarora's only evidence in support of including attorney's fees in its amount-in-controversy calculation is a footnote stating that "[a]lthough a complete accounting of Plaintiffs' Counsel's fees to date is not required, Plaintiffs can confirm that their fees to date exceed the jurisdictional amount." Opp'n at 13, fn. 13. This statement is insufficient because it fails to state an estimate of the attorney's fees and because, as discussed further below, it improperly seeks to aggregate Tuscarora's attorney's fees with its co-Plaintiff's. As such, Plaintiff Tuscarora has failed to prove by a preponderance of the evidence that it has individually pled the amount in controversy necessary for diversity jurisdiction.

Plaintiff Tuscarora next argues that it may aggregate its damages with co-Plaintiff GTN, because its claims are "common and undivided" from GTN's claims. Opp'n at 13. The Court disagrees. Claims are "common and undivided" only when they are "derived from rights that [the plaintiffs] hold in group status." Eagle v. Am. Tel. & Tel. Co., 769 F.2d 541, 546 (9th Cir. 1985). The fact that "claims may have questions of fact and law common to the group does not mean they have a common and

undivided interest." Urbino v. Orkin Servs. of Cal., 726 F.3d 1118, 1122 (9th Cir. 2013) (internal citation omitted). This is the case here. Plaintiffs have not alleged any shared interests in their respective gas pipeline systems. See Compl. Rather, Plaintiffs have carefully set out that GTN owns one pipeline system, the "GTN System," and that Tuscarora owns another pipeline system, the "Tuscarora System." Compl. ¶¶ 8-9. The mere allegation that Plaintiffs have had "collective dealings with Defendants" does not transmute separate property interests to a common and undivided interest for the purpose of calculating the jurisdictional amount in controversy. For these reasons, the Court will not aggregate Plaintiff Tuscarora's claims with co-Plaintiff GTN's claims. It follows that Plaintiff Tuscarora has failed to establish by a preponderance of the evidence that it may invoke the Court's subject matter jurisdiction.

E. Supplemental Jurisdiction

In an action involving multiple plaintiffs, a federal court may exercise supplemental jurisdiction over a co-plaintiff's claims that fail to meet the jurisdictional amount in controversy if (1) at least one plaintiff satisfies the amount in controversy, (2) the other elements of diversity jurisdiction are satisfied, and (3) the plaintiff's claims are part of the same "case or controversy." See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 549 (2005) ("We hold that, where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental

jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction."). For claims to be part of the same case or controversy, the claims must involve a "common nucleus of operative fact." See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966) (requiring a "common nucleus of operative fact" to confer supplemental jurisdiction over pendant state law claims).

Defendants do not contest that co-Plaintiff GTN satisfies the jurisdictional amount in controversy, that Plaintiff Tuscarora otherwise satisfies the elements for diversity jurisdiction, or that Plaintiff Tuscarora's claims are part of the same case or controversy as co-Plaintiff GTN's. See Reply at 4-5. Defendants' single objection to supplemental jurisdiction is that co-Plaintiff GTN has "no ties to or injury in California." Id. at 5. Neither GTN's ties to California nor the location of its injuries has any bearing on its power to invoke diversity jurisdiction and so this objection is irrelevant to the Court's present analysis. Because the elements for supplemental jurisdiction are met, the Court exercises supplemental jurisdiction over Plaintiff Tuscarora's claims as part of the same case or controversy as co-Plaintiff GTN's claims.

### F. Statute of Limitations

Defendants move to dismiss Plaintiffs' third claim for negligent misrepresentation as untimely under the applicable statute of limitations. Mot at 13. Defendants contend that the

statute of limitations for negligent misrepresentation is two years and more than two years have expired.  See E-Fab, Inc. v. Accountants, Inc. Servs., 153 Cal. App. 4th 1308, 1316 (2007). "Plaintiffs determined the source of the DTZ was the Cochrane Plant in or around December of 2018, [therefore] they had until in or around December of 2020 to file a claim.  Because Plaintiffs failed to file their Complaint until August 23, 2021, the statute of limitations for this cause of action has expired and dismissal is appropriate."  Mot. at 14.

   Plaintiffs contend that their claim for negligent misrepresentation is not untimely, because the applicable statute of limitations is three years when the allegations are based on deceit or fraud.  Arnold v. MetLife Auto & Home Ins. Agency, 2020 WL 1067002, at *7 n.5 (N.D. Cal. Mar. 5, 2020). Plaintiffs argue that because they allege that Defendants "falsely represented" facts (Compl. ¶ 79), their claim is based in deceit or fraud, and the three-year statute of limitations applies.  Opp'n at 15.

   "Negligent misrepresentation is born of the union of negligence and fraud.  If negligence is the mother . . . misrepresentation [is] the father."  See Ventura Cnty. Nat. Bank v. Macker, 49 Cal. App. 4th 1528, 1531 (1996). Reviewing the complaint, the Court concludes that Plaintiffs' claims resemble more the mother in negligence than fraud.  Under California law, the elements of a fraud claim are (1) a false representation; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages. See Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 22

Cal. Rptr. 3d 352 (Cal. 2004).  Plaintiffs allege that Defendants "knew or with reasonable diligence ought to have known" that their gas contained DTZ but "omitt[ed]" to inform Plaintiffs.  Compl. ¶ 81.  Plaintiffs' complaint is silent as to whether Defendants made any representations to Plaintiffs about the presence or lack thereof of DTZ in their gas products.  The complaint is likewise silent as to whether Defendants ever sought to induce some action or abstention of action from Plaintiffs based on their omissions.  As such, Plaintiffs' claim for negligent misrepresentation boils down to the contention that Defendants should have known better and should have disclosed the presence of DTZ to Plaintiffs.  Thus, Plaintiffs' allegations suggest that Defendants acted more negligently than fraudulently.  For this reason, the Court holds that the applicable statute of limitations for negligent misrepresentation in this case is two years and not three years.  Plaintiffs' third claim is dismissed with prejudice as untimely.

### III.  ORDER

For the reasons set forth above, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

IT IS SO ORDERED.

Dated: July 19, 2022

_____
JOHN A. MENDEZ
SENIOR UNITED STATES DISTRICT JUDGE